UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:21-cr-93 |
| | ) | |
| v. | ) | The Honorable Liam O'Grady |
| | ) | |
| MICHAEL JOSEPH VITANOVEC, | ) | Sentencing date:   September 17, 2021 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **DEFENDANT'S POSITION ON SENTENCING**

Michael Joseph Vitanovec is 60 years old, a 24-year veteran of the Air Force, a loving father, and a gifted graphic designer who, following his retirement from the military, had an excellent job providing media support to the Joint Chiefs of Staff at the Pentagon. But in 2016, he was in the darkest period of his life. In the wake of a divorce, suffering from depression, and in chronic pain from a workplace injury, Mr. Vitanovec upended his life by stealing toner cartridges and printer supplies worth a total of $48,257.55. His offense conduct was not sophisticated: he called a 1-800 number provided by Xerox to request office supplies, and subsequently sold items he took on E-Bay.

When his offense was uncovered, Mr. Vitanovec immediately expressed regret and remorse. He called every one of his co-workers to tell them of his misconduct. He also told his supervisor of 15 years, Nancy Velez, that he was "relieved his actions were discovered because he wanted it to end." PSR ¶ 21. Instead of engaging in denial or trying to hide his misconduct from his family and friends, Mr. Vitanovec also called

his close family members and friends to tell them what he had done. As he wrote in his letter to the Court:

> I decided to personally call all my co-workers, my close friends and family, and tell them what I did. I wanted them to hear from me and not from any stories that might circulate. I believe it was my responsibility to tell everyone. I also spoke with Reverend Grier, the pastor at a local church, who offered prayer and prayed with me. I told everyone what I did, "stole government property and sold it." I told them that I would be a felon.
>
> I broke down, cried, and apologized. I asked for their forgiveness. I promised myself that night that I will not hide from what I did. I have accepted full responsibility and have resolved to do what is right. That day, I determined that I would pay restitution to the Joint Staff. I would never again be involved with criminal activity. I would learn how to be a better person and show that to the community I live in.

Vitanovec Letter (attached as Exhibit 1).

Mr. Vitanovec has lived up to that resolve, and has drawn from his retirement account to pay full restitution in the amount of $48,257.55. PSR ¶ 35. Mr. Vitanovec's letter to the Court, and the letters from family members, friends, and former co-workers attached to this Position all reflect that the underlying conduct is utterly inconsistent with Mr. Vitanovec's personal and professional character.

It is not unusual for family members and friends to write letters of support for the Court's consideration in sentencing a person who has committed a crime. It is extraordinary that a former supervisor and co-workers would write such thoughtful and earnest letters for the Court's consideration when the crime involves theft from the workplace.

The advisory guideline range in this case is 6-12 months in Zone B, which even

under the Sentencing Guidelines authorizes a sentence of probation. U.S.S.G. §§ 5B1.1(a)(2); 5C1.1(c)(3).[1] For the reasons set forth in this Position, a sentence of probation would be sufficient but not greater than necessary punishment for his wrongful conduct.

## BACKGROUND LEGAL PRINCIPLES GOVERNING SENTENCING

"It has been uniform and consistent in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Pursuant to *Booker v. United States*, 543 U.S. 220 (2005), the Court's sentencing inquiry is defined by 18 U.S.C. § 3553(a), which requires it to consider a variety of sentencing factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, and the advisory range provided by the U.S. Sentencing Guidelines.[2]

---

[1] While the government has requested a sentence "at the bottom of the Guidelines range," it also requests a 3-month sentence of incarceration followed by 3 months of community confinement or home detention, Gov't Pos. at 1. The guidelines authorize the Court to impose a probationary sentence that requires only home detention, not incarceration. See U.S.S.G. §§ 5B1.1, app. n.1(B), 5C1.1, app. n.3(B).

[2] The full list of factors for the district court to consider is: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment; (3) the kinds of sentences available; (4) the advisory Guidelines range; (5) any pertinent policy statements by the U.S. Sentencing

All of these considerations are designed to "ensure[] that the punishment will suit not merely the offense but the individual defendant." *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011) (citation omitted). Moreover, § 3553(a) "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing." *United States v. Lymas*, 781 F.3d 106, 112 (4th Cir. 2015) (quoting *Kimbrough v. United States*, 552 U.S. 85, 101 (2007)). Indeed, "the district court's job is not to impose a reasonable sentence. Rather, the district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006).

## ARGUMENT

**I.     Mr. Vitanovec's True Character is Reflected in the Letters from His Family, Friends, and Former Co-Workers.**

The outlines of Mr. Vitanovec's life are well described in the Presentence Report. Born in 1961 to Edward Vitanovec and Hiroko Vitanovec, he and his siblings had a difficult childhood marked by physical abuse inflicted by their father. PSR ¶¶ 57-58. Mr. Vitanovec joined the Air Force in 1985, the same branch of the military that his father served in, and he served honorably until his retirement in 2008 with the rank of Master Sergeant. *Id.* ¶¶ 60, 91.

---

Commission; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. §§ 3553(a)(1)-(7).

4

In 1988, he married Brenda Vitanovec, and the couple had two children: Chesna, born in 1990, and Ian, born in 1993. About his father, Ian writes that "[a]ll of [his] life, Michael has been a loving, caring, and supportive father. He has always cared deeply about his family, only wanting the best for us all. . . . I am proud to call Michael Vitanovec my father, my role model, and my hero." Letters (attached as Exhibit 2). Chesna is severely hearing disabled, and suffers from autism. Mr. Vitanovec and his daughter are very close, but she was unable to write a letter to the Court.

Mr. Vitanovec served on active duty in the Air Force from 1985 to December 31, 2009, and was deployed on multiple occasions overseas. PSR ¶ 91. At the end of his active duty, he began work as a graphic designer in a small department supporting the Joint Chiefs of Staff at the Pentagon. *Id.* ¶ 89.

He excelled in this work. His former supervisor, Nancy Velez, describes his performance and reputation as "steller." She notes that he was entrusted as the section security manager, and enumerates in her letter numerous awards for his outstanding service and accomplishments in his field. His fellow graphic designer, Joseph Kowalski, describes him as "reliable, talented, and an expert in his craft." Another co-worker, Edward Akaki, knows Mr. Vitanovec as a "very talented graphics artist, but also as an honest and hardworking, dedicated individual" who "has always exhibited and practiced the highest level of ethical and legal standards in everything he did." See Exhibit 2 (letters). Mr. Vitanovec's offense conduct is fundamentally at

5

odds with his true character, as evidenced by these letters.

## II. Mr. Vitanovec Committed this Offense When His Untreated Mental Illnesses Became Overwhelming.

Between 2012 and 2014, Mr. Vitanovec's marriage fell apart. PSR ¶ 62. This event took an incredible toll on Mr. Vitanovec's mental health, as described in the PSR in paragraphs 73-75. *See also* Letter from Dr. Wesley Dickerson (filed under seal). His former supervisor, Ms. Valez, also describes witnessing the impact of these personal events on Mr. Vitanovec. Exhibit 2.

There is no doubt that this event contributed to Mr. Vitanovec's commission of the underlying offense. Dickerson Letter (filed under seal). The divorce, coupled with chronic pain from an injury that occurred at work, and mounting financial pressure arising from the divorce, combined to impose enormous pressure on Mr. Vitanovec that he struggled to bear. *See* Exhibit 1 at 2-3. As Mr. Vitanovec says himself, this does not excuse his conduct. But it provides context for why he did what he did. It also explains why people who know him well, like his former supervisor, could say that "[w]hile [h]is actions may have tarnished his polished reputation, [she] believe[s] he is more than capable of restoring himself to a faithful and law-abiding citizen." Letter from Nancy Valez.

## III. Mr. Vitanovec Deeply Regrets His Conduct and Has Done Everything in His Power to Atone for It.

As soon as he was questioned about the stolen office supplies, Mr. Vitanovec admitted his guilt and expressed his deep remorse. He is eager to atone for his

6

conduct and find honest work. He also is dedicated to serving his community, and has plans to start a non-profit organization to help recently-incarcerated persons reintegrate into society. As part of his atonement, Mr. Vitanovec, has repaid his restitution in full, and is prepared to provide additional funds to satisfy the forfeiture judgment.

Moreover, Mr. Vitanovec has confronted his shame by honestly and openly revealing his criminal misconduct to his closest friends and family members. When Mr. Vitanovec had to leave his marital home during the course of his divorce, he rented a room from his co-worker's mother, Anita Kowalski (her son, Joe, also wrote a letter of support). Ms. Kowalski became one of his dearest friends. She writes that Mr. Vitanovec joined her church, helped at a soup kitchen, and worked with her in her garden. She also describes how Mr. Vitanovec was affected by his prescription pain medication, his depression arising from his divorce, and the financial burdens he faced. She also says that she "love[s] Mike dearly. He means the world to me. His confession of the theft shocked and saddened me. It did not fit the character of the Mike I know." Letter from Anita Kowalski. The fact that Mr. Vitanovec has been so open and honest with his friends and family about his misconduct – and yet they continue to support and honor him – speaks to the sincerity and genuineness with which Mr. Vitanovec has sought to atone for his criminal conduct.

IV. **The § 3553(a) Factors Strongly Support a Sentence of Probation.**

7

Mr. Vitanovec's lengthy and selfless service to this country shows that, despite his moral and criminal failures, he is fundamentally honorable and deserves the full extent of the Court's mercy. § 3553(a)(1). There is no need to protect the public from further crimes by him because (1) his offense conduct occurred during a traumatic and aberrant period in his life, (2) he deeply regrets his participation, (3) he is 60 years old, and (4) the mental health problems that contributed to his behavior are controlled by medication and counseling. § 3553(a)(2); *see United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) ("There is a statistically significant drop in recidivism for offenders aged 45 to 54 compared with 35 to 44 year olds, and rates for those aged 55 and older are even lower") (citation omitted).

Moreover, a federal felony conviction and a probationary sentence is sufficient to reflect the seriousness of Mr. Vitanovec's offense conduct. § 3553(a)(2). Indeed, a sentence of probation imposes conditions that "substantially restrict [] liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007). For example, "[p]robationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking." *Id.* Moreover, as detailed in Mr. Vitanovec's letter to the Court, his felony conviction itself imposes an almost insuperable barrier to obtaining employment.

In sum, in this case, a sentence of probation is sufficient but not greater than

8

necessary to accomplish the goals of § 3553.

## CONCLUSION

For the foregoing reasons, Michael Vitanovec respectfully asks the Court to impose a sentence of probation.

> Respectfully submitted,
>
> Michael Vitanovec
>
> By Counsel
>
> _____/s/_____
> Geremy C. Kamens (Va. Bar No. 41596)
> Office of the Federal Public Defender
> 1650 King Street, Suite 500
> Alexandria, Virginia 22314
> (703) 600-0800 (T)
> (703) 600-0880 (F)
> Geremy_Kamens@fd.org